IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE L. MAILHOT, | ) | |
| | ) | No. 16 C 10248 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Claimant Stephanie Mailhot ("Claimant" or "Ms. Mailhot") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income benefits ("SSI") benefits (doc. # 15: Pl.'s Mot. for Summ. J.). The Commissioner has filed a motion seeking affirmance of the decision denying benefits (doc. # 20: Def.'s Mot. for Summ. J.), and Claimant has filed a reply (doc. # 22). For the following reasons, we remand the case.

### I.

On July 6, 2010, Ms. Mailhot filed an application for SSI, alleging a disability beginning on September 1, 2009, with a date last insured of December 31, 2014 (R. 337-38, 423). After her claim was initially denied on January 13, 2011 and on reconsideration on March 18, 2011 (R. 107, 108), Ms. Mailhot participated in a hearing before an Administrative Law Judge ("ALJ") (R. 71-106), who ruled that Ms. Mailhot was not disabled (R. 109-124). The Appeals Council

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On January 4, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 7).

then remanded the case to the ALJ for consideration of additional evidence related to Claimant's back pain and treatment (R. 125-29). The ALJ conducted a second hearing, at which Ms. Mailhot and a vocational expert ("VE") testified (R. 41-70). On April 23, 2015, the ALJ ruled that Ms. Mailhot was not disabled, and Ms. Mailhot filed a request for review (R. 7-9, 19-40). On September 4, 2016, the Appeals Council upheld the ALJ's determination, making the ALJ's determination the final opinion of the Commissioner (R. 1-3). *See* 20 C.F.R. § 404.981; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

We remand because the ALJ failed to adequately address the evidence concerning Ms. Mailhot's mental impairment, or to adequately support her determination that this impairment was non-severe. Because we remand on this ground, we do not reach the other challenges the Claimant raises to the ALJ's decision, and we focus our discussion of the record and the ALJ's decision on the mental health issue.

## I.

While Ms. Mailhot did not list any mental health impairments in her initial application for benefits, she reported a history of depression at medical appointments related to her back pain in September 2009 and 2010 (R. 524, 528, 531). Records from those appointments show that Ms. Mailhot was taking an anti-depressant, Amitriptyline, prescribed by a doctor at the Yorkville clinic that Ms. Mailhot visited for treatment for her back pain (R. 533).

In 2012, Ms. Mailhot underwent a private psychiatric evaluation prior to having a spinal cord stimulator implanted (R. 822-24). The examiner diagnosed Ms. Mailhot with generalized anxiety disorder and noted that her "Beck Depression Inventory" score placed her in the mild mood disturbance category (R. 822-23). At this examination, Ms. Mailhot reported that she had noticed problems with her short term memory and that her attention decreased when her pain

worsened (R. 911). It is not apparent from the record if Ms. Mailhot was still taking an anti-depressant at the time of this examination; the examiner's recommendations including a suggestion that Claimant would benefit from psychopfarmacological treatment of her anxiety (R. 913). Ms. Mailhot began taking Alproazolan (Xanax) for anxiety in April 2014 and was still taking it at the time of her 2015 hearing (R. 58, 488). At that hearing, Ms. Mailhot testified that she had experienced problems with anxiety for the previous two years and had been taking Xanax for about one year (R. 58).

In her opinion, the ALJ analyzed Ms. Mailhot's claims using the traditional five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a). The process requires the ALJ to consider: (1) whether the Claimant has engaged in any "substantial gainful activity" since the alleged disability onset date; (2) if her impairment or combination of impairments is severe; (3) whether her impairments meet or medically equal any impairment listed in Appendix 1 of the regulations; (4) whether her residual functional capacity ("RFC") prevents her from performing past relevant work; and (5) if her RFC prevents him from performing any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), (b)-(f); 416.920(a).

As relevant for this decision, the ALJ found at Step Two that Ms. Mailhot's anxiety was not a severe impairment. The entirety of the ALJ"s evaluation of Ms. Mailhot's mental health was the comment that, "other than taking Xanax . . . the record does not show either regular treatment or counseling, or regular complaints of anxiety. . . Therefore, this impairment is 'non-severe', with no more than mild deficits in the Part B criteria of the Listings" (R. 25). In establishing Ms. Mailhot's RFC, the ALJ found that Ms. Mailhot could perform sedentary work as long as she did not lift more than 15 pounds, and that she could sit for six hours in an eight

hour workday with seated intervals of up to two hours. The ALJ also found that Ms. Mailhot could walk and/or stand for a total of two hours in an eight hour workday and was limited to occasional stooping and crouching and frequent crawling, climbing, stairs, kneeling, balancing, handling, and fingering (R. 26). The ALJ did not include any limitations in Ms. Mailhot's RFC related to her mental health condition.

## II.

We will uphold the ALJ's determination if it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (internal citations omitted). We do not reweigh evidence or substitute our own judgment for that of the ALJ. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

When a claimant alleges mental health issues, the ALJ must use the so-called "special technique" to evaluate whether the claimant has a medically determinable mental health impairment, and whether that impairment causes functional limitations. The first part of the special technique involves having the ALJ look at the claimant's "symptoms, signs, and laboratory findings" to determine whether a mental health impairment exists. 20 C.F.R. § 404.1520a; *Craft v. Astrue,* 539 F.3d 668, 674–75 (7th Cir.2008). If the ALJ determines that the claimant has a medically determinable mental health impairment, the ALJ must next undertake a "Part B" analysis, which rates the degree of the functional limitation resulting from the claimant's impairment with respect to four broad functional areas: activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §
404.1520a(c)(3). For the first three categories, the ALJ must rate the claimant's limitations as
none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). If there are no episodes of
decompensation and the rating in each of the first three categories is none or mild, the
impairment generally is not considered severe and the claimant thus is not disabled. *Id.* §
404.1520a(d)(1).

As an initial matter, it is undisputed that the ALJ did not use the special technique to
evaluate Ms. Mailhot's mental health condition or its effects on her ability to function. Instead,
the ALJ merely acknowledged Ms. Mailhot's mental health complaints but then dismissed them
as non-severe because the record did not show regular treatment or counseling (other than Ms.
Mailhot's use of Xanax). While the ALJ used the term "Part B criteria," she did not address any
of the four functional areas. There are a number of problems with this approach.

*First,* the ALJ erroneously ignored the evidence of "symptoms, signs, and laboratory
findings" in the record regarding Ms. Mailhot's mental health, including her history of
complaints of depression, her use of medication in 2009 and beyond to control her depression,
and her diagnosis of anxiety in 2012. *See, Thomas v. Colvin,* 534 Fed.Appx. 546, 550 (7th Cir.
2013). (ALJ must confront evidence that does not support his conclusion and explain why it was
rejected). And while we recognize that the medical evidence concerning Ms. Mailhot's mental
health is lean, it is not non-existent. *C.f. Orienti v. Astrue,* 958 F.Supp.2d 961, 973 (N.D. Ill.
2013 (ALJ did not err in failing to use special technique where only evidence claimant had a
mental health impairment was a single record out of ten years of medical evidence that did not
contain a doctor's signature or opinion).

The ALJ's error was compounded because the ALJ cited to Ms. Mailhot's lack of mental health treatment as evidence that her mental health condition was not severe. But, before the ALJ could draw that inference, she had an obligation to question Claimant on the reasons for the lack of treatment. Indeed, the medical record contains evidence that Ms. Mailhot had to forgo medical treatment for a back injury because she lacked insurance; at the least, the ALJ needed to inquire whether Ms. Mailhot's failure to obtain mental health treatment was for a similar lack of insurance.

After ignoring evidence that Ms. Mailhot had experienced mental health problems for several years, the ALJ then failed to undertake the remainder of the special technique and did not analyze Ms. Mailhot's mental impairment as it affected the four Part B factors. While *Craft* recognizes that failure to undertake the special technique could be harmless, 539 F.3d at 675, we do not find that to be the case here, where the ALJ's failure to use the special technique highlights the ALJ's overall error of ignoring relevant evidence of Ms. Mailhot's mental health condition.

*Second,* even beyond the ALJ's failure to use the special technique, the ALJ failed to inquire into the basis of Ms. Mailhot's claims or further develop the record before determining that Ms. Mailhot's mental impairments were non-severe. This error is particularly stark because the ALJ did not rely on the opinion of any mental health professional to assist in her conclusions. Typically, a claimant alleging a mental impairment will undergo an Agency-sponsored psychological evaluation as part of the claims process. *See Richards v. Astrue,* 09-2595, 2010 WL 1443893 (7th Cir. April 13, 2010). But, as in *Richards,* Ms. Mailhot's complaints about her mental impairment came after she filed her claim for benefits, and thus, the ALJ had "a duty to solicit additional information to flesh out an opinion for which the medical support is not readily

discernable." *Richards*, 2010 WL 1443893 at *4, *citing Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir.2004). The Commissioner argues that the ALJ did have an expert opinion on which to rely because Ms. Mailhot underwent a psychological examination prior to having a spinal stimulator implanted (Comm. Mem. in Support of Summ. J. at 2). Although it is true that such a report exists in the medical record, the ALJ gives no indication in her opinion that she reviewed or relied on the opinion in making her determination. Thus, we find that the ALJ failed to develop the record with respect to Ms. Mailhot's mental health.[3]

*Third,* even if the ALJ had correctly determined that Ms. Mailhot's mental impairment was non-severe, the ALJ failed to account for it at all when determining Ms. Mailhot's RFC. When determining a claimant's RFC, the ALJ must consider the combined effect of all impairments, "even those that would not be considered severe in isolation." *Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir.2009) (citing 20 C.F.R. § 404.1523). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue,* 596 F.3d 419, 423 (7th Cir.2010) (citing *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir.2003)). Because the ALJ did not mention Ms. Mailhot's mental impairments at all in her explanation of Claimant's RFC, we have no idea if the ALJ considered whether, or to what extent, these impairments might affect her ability to perform work.

---

[3] We also reject the Commissioner's reliance on Ms. Mailhot's GAF score of 70. GAF, or global assessment of functioning, is a system used to score the severity of psychiatric illness, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited on November 14, 2017). The Commissioner points to the score – as assessed at Ms. Mailhot's pre-surgical psychiatric consultation – as support for the ALJ's finding that Ms. Mailhot's mental impairment was mild. But the ALJ does not mention the GAF score in her opinion; indeed, the ALJ does not mention the psychiatric evaluation at all, including that the examiner diagnosed Ms. Mailhot with generalized anxiety disorder. Therefore, the Commissioner is barred from using that evidence to support its position. *SEC v. Chenery Corp.,* 318 U.S. 80. 87 (1943) (An agency's lawyers may not defend the agency's decision on a ground the agency itself has not raised.) Moreover, even if the ALJ had relied on the GAF score, such reliance does not establish that Ms. Mailhot was not disabled. We note that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed.2013). *See Williams v. Calvin,* 757 F.3d 610, 613 (7th Cir. 2014) (recognizing the discontinuation of use of the GAF scale after 2012).

## CONCLUSION

For the reasons set forth above, we grant Ms. Mailhot's request for remand (doc. # 15), and deny the Commissioner's request for affirmance (doc. # 20). This case is remanded for further proceedings consistent with this ruling.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 21, 2017